UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAVID C. MAGIN,

                        Plaintiff,

v.                                                          5:05-CV-1573
                                                            (GTS/GJD)
CELLCO PARTNERSHIP d/b/a VERIZON
WIRELESS; VERIZON WIRELESS AND
MANAGED CARE DISABILITY PLAN;
and METLIFE CORPORATION,

                        Defendants.
_____

APPEARANCES:                                  OF COUNSEL:

OLINSKY SHURTLIFF LLC                         WILLIAM J. LAMITIE, ESQ.
   Counsel for Plaintiff
300 S. State Street, 5th Floor
Syracuse, NY 13202

HODGSON RUSS LLP                              CATHERINE GRANTIER COOLEY, ESQ.
   Counsel for Defendants                     HUGH M. RUSS, III, ESQ.
The Guaranty Building                         KATHLEEN M. SELLERS, ESQ.
140 Pearl Street, Suite 100
Buffalo, NY 14202-4040

NEXSEN PRUET LLC                              JAMES T. HEDGEPATH, ESQ.
   Counsel for Defendants                     WILLIAM H. FLOYD, ESQ.
201 W. McBee Avenue, Suite 400
Greenville, SC 29601

HON. GLENN T. SUDDABY, United States District Court Judge

## MEMORANDUM and ORDER

        This action was filed pursuant to the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. §§ 1001 *et seq.*  Generally, in his Complaint, David Magin ("Plaintiff")

alleges that Cellco Partnership d/b/a Verizon Wireless ("Verizon"), Verizon Wireless and

Managed Disability Plan, and Met Life Corporation ("Defendants") denied Plaintiff Long Term

Disability benefits and Short Term Disability benefits to which he was entitled under the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B).  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)

On April 5, 2006, Defendants filed a motion to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (Dkt. No. 9.)  On February 23, 2007, Chief Judge Norman A. Mordue issued an Order denying Defendants' motion to dismiss.  (Dkt. No. 21.)  However, in the Order, Judge Mordue (1) effectively dismissed Plaintiff's state common law claims of breach of contract and negligence by recharacterizing the claims as ERISA causes of action, and (2) indicated that, "[i]f plaintiff can demonstrate that he applied for [Long Term Disability] benefits and that defendants failed to take action on the application, he may be entitled to de novo review of his request for [Long Term Disability] benefits."  (Dkt. No. 21.)

Currently pending are Defendants' motion for summary judgment and Plaintiff's motion for summary judgment, both pursuant to Fed. R. Civ. P. 56.  (Dkt. Nos. 29 and 30.)  For the reasons that follow, Defendants' motion for summary judgment is granted, Plaintiff's motion for summary judgment is denied, and his Complaint is dismissed in its entirety.

## I.      BACKGROUND

### A.      Undisputed Material Facts

The following facts, which are taken from the parties Rule 7.1 Statements and Responses, are undisputed.  (*See* Dkt. No. 29, Part 3; Dkt. No. 30., Part 3; and Dkt. No. 34.)

During the relevant time period, Plaintiff was employed as a Retail Sales Manager by Verizon Wireless, the sponsor of the Verizon Wireless and Managed Disability Plan (the "Plan"). The Short Term Disability ("STD") component of the Plan was self-funded by Verizon Wireless. The Long Term Disability ("LTD") component of the Plan was insured by MetLife.  MetLife was the claims administrator for both the STD and LTD components of the Plan.

On February 5, 2004, Plaintiff stopped working.  On February 9, 2004, he saw Nurse Practitioner Karen Wickert, who diagnosed him with depression, anxiety, Post-Traumatic Stress Disorder and shingles.  On February 9, 2004, Plaintiff notified his employer that he had been taken out of work by his medical provider, and filed a claim for STD benefits under the Plan. Plaintiff's primary care physician's office provided MetLife with the medical report drafted by Nurse Wickert on February 9, 2004.  This "Acute Care/Follow Up" form was the only document that Plaintiff submitted to MetLife to support his STD claim.  This form stated that Plaintiff presented "for follow-up on stressful situation," a rash on his side, and blood in his stool.  The form also stated that Plaintiff has "very low self esteem, feelings of failure, feeling overwhelmed, can't concentrate, [and] insomnia."  The form concluded that Plaintiff would be out of work until March 8, 2004, and would continue some type of counseling.

After receiving Plaintiff's claim, MetLife telephoned Plaintiff to obtain additional information.  Plaintiff did not answer the telephone and did not return MetLife's telephone call. When Plaintiff failed to respond, MetLife moved forward with considering his claim.

On February 27, 2004, MetLife notified Plaintiff in writing that his claim for STD was denied because the medical evidence he submitted did not provide evidence sufficient to entitle Plaintiff to STD benefits.  Specifically, MetLife stated that "[t]here was no report of the frequency or severity of any symptoms or any description of how they might prevent you from performing the duties of your job."

On March 18, 2004, Plaintiff spoke with his MetLife claim manager and the claim manager's supervisor regarding the initial denial of his claim.  During both conversations, Plaintiff was informed of his right to appeal the denial.  In addition, Plaintiff was advised that he should submit information "from his therapist and/or any other treating provider for his current condition indicating how he is unable to work."

On March 26, 2004, Plaintiff appealed MetLife's decision.  On the Appeal Request Form, Plaintiff stated that additional information would be submitted to support his claim.  On April 12, 2004, MetLife acknowledged receiving Plaintiff's appeal letter.  On April 13, 2004, MetLife received a letter from Karen Wickert in support of Plaintiff's benefits claim.  The letter stated that Plaintiff was being treated for "generalized anxiety disorder and post traumatic stress disorder." The letter further stated that "[t]hese conditions currently make him unable to work because his job is very stressful and he has interpersonal conflict at work."

In response to Plaintiff's appeal, MetLife requested an independent medical opinion from Dr. Leonard Kessler, a board-certified psychiatrist.  On May 12, 2004, a MetLife case manager referred Plaintiff's file to Dr. Kessler for review.  The MetLife case manager requested that Dr. Kessler comment specifically on whether the medical information submitted by Plaintiff supported a finding of a significant psychiatric impairment as of February 6, 2004.

On May 12, 2004, Dr. Kessler attempted to contact Plaintiff and Ms. Wickert to set up a telephone conference.  Dr. Kessler was unable to contact either Plaintiff or Ms. Wickert, and neither party returned his telephone calls.

On that same day (May 12, 2004), at 3:34 p.m., after reviewing the limited information provided by Plaintiff and his health care provider(s), Dr. Kessler responded to the MetLife case manager in the form of a report.  The report provided the following observations and opinions:

> This 38 year old . . . married man left work, as a Retail Store Manger (sic), on 2/5/04 and has alleged disability based upon diagnosed Post Traumatic Stress Disorder and Generalized Anxiety Disorder.  There is no support, in terms of history and mental status findings, for these diagnoses consistent with DSM IV criteria.  Ms. Wickert has reported that '[h]is job is very stressful and he has interpersonal conflict at work.'  She did not provide a treatment plan to address this interpersonal conflict but reported counseling which has not been documented in terms of onset, frequency, duration, and response.  Attempts to reach the claimant and Mrs. Wickert, for telephone conferences, were not successful with no return calls by either.  This

4

> claim would appear to represent a primary work conflict.  There is
> insufficient information to support a psychiatric diagnosis, as
> consistent with DSM IV criteria.  There is inadequate information to
> assess the presence of any significant functional limitations from
> 2/6/04.  Lacking is a comprehensive psychiatric history, objective
> mental status examination, sustained DSM IV diagnosis, treatment
> plan, and evidence of functional limitations.

On May 24, 2004, based upon the medical records submitted by Plaintiff and Dr.

Kessler's opinion, MetLife denied Plaintiff's claim.  MetLife's decision letter advised Plaintiff

that he had exhausted his administrative remedies under the Plan, and that MetLife would

consider no further administrative appeals.  The denial letter also informed Plaintiff that he

would be provided with a copy of the documents, records and other information relevant to his

claim upon request.  In addition, the letter advised Plaintiff of his right to bring a civil action

under Section 502(a) of ERISA.  The letter concluded by stating that "there is lack of

information submitted in your file that would suggest you were unable to perform the usual

duties of your job because of an impairment for which there is material medical evidence."

On June 4, 2004, Plaintiff wrote a letter to MetLife, requesting copies of the documents

used to deny his claim.  On October 1, 2004, Plaintiff's then-attorney sent a letter to MetLife

requesting the exact same materials.  The parties dispute whether MetLife subsequently provided

the documents.  However, there is no dispute that Plaintiff never filed a claim for LTD benefits.

**B.     Relevant Language of the Plan**

**1.     Qualification for STD Benefits**

In order to qualify for STD benefits under the Plan, a participant in the Plan must meet

the applicable definition of "disability."

> An employee is considered disabled under the STD component of the
> Managed Disability Plan when the employee is absent from work
> because of impairment for which there is material medical evidence
> that the employee cannot perform the Essential Functions of his or her
> job at Verizon Wireless.  The employee must not be engaged in any

> other job/occupation or earns any self employment income during the
> STD application process or while he or she is receiving STD benefits.

(Dkt. No. 29, Part 2, at 2.)

With respect to the STD component of the Plan, MetLife, as third-party claims

administrator, possesses discretionary authority as follows:

> Verizon Wireless has delegated to MetLife discretionary authority as to all
> aspects of claims administration for the STD portion of the Managed
> Disability Plan.  This delegation includes the ability to render initial decisions
> on claims, render decisions on all appeals of denied claims, and to otherwise
> interpret the terms of the STD portion of the Plan.

(Dkt. No. 29, Part 2, at 3.)

## 2.       Qualification for LTD Benefits

In order to qualify for LTD benefits under the Plan, a participant in the Plan must meet

the applicable definition of "disability," which states as follows:

> Under the LTD benefit component of the Managed Disability Plan, an
> employee is considered to be 'disabled' when the employee is absent
> from work because of an impairment for which there is material
> medical evidence that (a) the Employee cannot perform the Essential
> Functions of his or her job at Verizon Wireless; and (b) the employee
> cannot perform any other job/occupation for which he or she is
> qualified by training, education or experience.  The employee must not
> be engaged in any other job/occupation or earn any self-employment
> income during his or her period of disability.

(Dkt. No. 29, Part 2, at 2-3.)

MetLife also possesses discretionary authority with respect to the LTD component of the

Plan as follows:

> Verizon Wireless has delegated to MetLife the responsibility for
> processing your initial claim for LTD benefits and any appeal you may
> request (if your initial claim is denied), gathering information about
> your medical condition, determining whether you qualify for LTD
> benefits under the terms of the Managed Disability Plan, and if you
> qualify, making sure your LTD benefits are paid accurately and
> promptly.

(Dkt. No. 29, Part 2, at 3-4.)

Finally, the Managed Disability Plan provides as follows:

> LTD benefits may also be payable if you are not eligible for STD, but are
> receiving worker's compensation benefits.  Eligibility is still contingent upon
> being absent from work for a minimum of 26-weeks (the 'qualifying period') . . .
> In any case, you must give notice of your claim to MetLife within 30 days after
> the date you become disabled (i.e. if you do not qualify for STD and/or are on
> workers' compensation), and you must send your application for LTD benefits
> with accompanying medical data to MetLife no later than 30 days prior to the
> expiration of the 26-week qualifying period.

(Dkt. No. 29, Part 2, at 6.)

Plaintiff's 26-week qualifying period began to run on February 9, 2004, when he claims

he became disabled and left his position at Verizon Wireless.  Plaintiff did not submit, and has

never submitted, any written claim for LTD benefits under the Plan.

### C.     Summary of Grounds in Support of Defendants' Motion

On February 1, 2008, Defendants moved for summary judgment pursuant to Fed. R. Civ.

P. 56.  (Dkt. No. 29.)  Defendants' motion is essentially premised on the following two grounds:

(1) Defendants' decision to deny Plaintiff's STD benefits was not arbitrary and capricious, but

reasonable and based on substantial evidence in the administrative record; and (2) Plaintiff has

never asserted a claim for LTD benefits.  (Dkt. No. 29, Part 2.)

### D.     Summary of Grounds in Support of Plaintiff's Motion

On February 1, 2008, Plaintiff moved for summary judgment pursuant to Fed. R. Civ. P.

56.  (Dkt. No. 30.)  Plaintiff's motion is premised on the following four grounds: (1) Defendants

breached a fiduciary duty owed to Plaintiff by failing to provide him with requested copies of his

claims file after MetLife upheld the denial of his claim; (2) because MetLife breached a

fiduciary duty, the denial of Plaintiff's claim should be reviewed de novo; (3) under a de novo

standard of review, Plaintiff is entitled to judgment as a matter of law; and (4) even under an

abuse-of-discretion standard of review, Plaintiff is entitled to judgment as a matter of law.  (Dkt.

No. 30, Part 2.)

## II.      APPLICABLE LEGAL STANDARDS

### A.      Legal Standard Governing Motions for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the moving party has met this initial responsibility, the nonmoving party must come forward with "specific facts showing a genuine issue [of material fact] for trial."  Fed. R. Civ. P. 56(e)(2).

A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the novmoving party."  *Anderson*, 477 U.S. at 248.  As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact."  *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]; *see also* Fed. R. Civ. P. 56(e)(2).  As the Supreme Court has famously explained, "[the nonmoving party] must do more than simply show that there is some metaphysical doubt as to the material facts." [citations omitted].  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248.  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* [citation omitted].

"It is appropriate to consider a challenge under ERISA to the denial of disability benefits as a summary judgment motion reviewing the administrative record." *Suarato v. Building Services 32BJ Pension Fund*, 554 F. Supp.2d 399, 414-15 (S.D.N.Y. 2008) (citing *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 [2d Cir. 2003]); *see also Gannon v. Aetna Life Ins. Co.*, 05-CV-2160, 2007 WL 2844869, at *6 (S.D.N.Y. Sept. 27, 2007) ("[S]ummary judgment provides an appropriate vehicle whereby the Court can apply substantive ERISA law to the administrative record."); *Chitoiu v. UNUM Provident Corp.*, 05-CV-8119, 2007 WL 1988406, at *3 (S.D.N.Y. July 6, 2007); *Perezaj v. Bldg. Serv. 32B-J Pension Fund*, 04-CV-3768, 2005 WL 1993392, at *4 (E.D.N.Y. Aug.17, 2005) ("A court evaluating a fund's final decision under the arbitrary and capricious standard should therefore grant summary judgment to the fund where there is no genuine dispute regarding whether the decision was arbitrary and capricious.").

**B.     Legal Standard Governing Actions Brought Under ERISA**

"ERISA does not set out the appropriate standard of review for actions under § 1132(a)(1)(B) challenging benefit eligibility determinations." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989). The Supreme Court has thus held "that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the [plan] administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co.*, 489 U.S. at 115.

"[W]here the ERISA plan confers upon the plan administrator discretionary authority to "construe the terms of the plan," the district court should review a decision by the plan administrator under an excess of allowable discretion standard." *Frommert v. Conkright*, 535 F.3d 111, 119 (2d Cir. 2008) (citing *Nicols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 108 (2d Cir. 2005) [noting that the proper standard when a Plan vests the administrator with discretionary authority is "abuse of discretion."]). Under such a standard, an administrator abuses its

discretion only when the administrator's actions are arbitrary and capricious.  *See, e.g., Guglielmi v. Northwestern Mut. Life Ins. Co.*, 06-CV-3431, 2007 WL 1975480, at *4 (S.D.N.Y. July 6, 2007) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 [1989]).   Since this is a "highly deferential standard of review, an administrator's decision should only be disturbed if it is without reason, unsupported by substantial evidence or erroneous as a matter of law, considering the relevant factors of the decision." *Guglielmi*, 2007 WL 1975480, at *4 [citations and internal quotations omitted].  "Substantial evidence consists of such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [administrator and] . . . requires more than a scintilla but less than a preponderance." *Id*. [citation and internal quotations omitted].   As a result, "[a]n administrator's decision under this deferential standard may be upheld even when 'there is evidence in the record . . . that would have supported a contrary finding.'"  *Id*. (quoting *Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d 89, 94 [2d Cir. 2000]).   Furthermore, "[a] district court's review under the arbitrary and capricious standard is limited to the administrative record." *Id*. [citation and internal quotation omitted].

## III.   ANALYSIS

### A.   Appropriate Standard of Review

In this case, the Plan expressly gives MetLife "discretionary authority" to construe the terms of the plan.  In addition, MetLife applied the terms of the Plan and (assertedly) exercised its discretion in denying Plaintiff STD benefits.  Therefore, this is not a "deemed denied" situation, where de novo review would be appropriate.  *See Nichols*, 406 F.3d at 109 (noting that a claim is "deemed denied" when there is "no valid exercise of . . . discretion," and holding that "a 'deemed denied' claim is entitled to de novo review").

Moreover, the Court rejects Plaintiff's argument that, because record evidence exists that MetLife failed to provide Plaintiff with requested copies of his claims file after MetLife upheld the denial of his claim, MetLife's denial of Plaintiff's claim should be reviewed de novo.  The cases cited by Plaintiff in support of this argument are distinguishable from the current case in that the cited cases involved untimely decisions on claims, not a post-decision denial of records. *See Nichols v. Prudential Insur. Co. of Am.*, 406 F.3d 98, 105-06 (2d Cir. 2005); *Torres v. Pittston*, 346 F.3d 1324, 1333 n.11 (10th Cir. 2003).  Furthermore, the Court finds that it would not make sense to deem a final decision, rendered by an administrative body based on an exercise of discretion (on which the claimant's administrative remedies have been exhausted), as subject to a more strict standard of review in federal court merely because, after the decision was rendered, the administrative body did not comply with the claimant's request for documents in order to file a claim in federal court.

For all of these reasons, the Court will review MetLife's decision to deny Plaintiff STD benefits under an "excess of allowable discretion standard," and only consider whether MetLife's actions were arbitrary and capricious.

### B.      Plaintiff's Claim of Entitlement to STD Benefits

#### 1.      Breach of Fiduciary Duty

Plaintiff claims that Defendants breached a fiduciary duty owed to him by failing to provide him with requested copies of his claims file after MetLife upheld the denial of his claim. Plaintiff claims that he requested copies of his claims file from Defendants on June 4, 2004, and that his then-attorney (Brian J. Barry) requested the exact same materials from Defendants a few months later on October 1, 2004.  According to Plaintiff, despite these requests, he never received copies of the materials.  Conversely, Defendants assert that MetLife's claims diary reflects the receipt of Plaintiff's June 4, 2004 request, and that the diary also reflects that the materials were mailed to Plaintiff, as per his request, on June 25, 2004.

11

Regardless of this factual dispute, there are three additional facts that bear mentioning, which the Court relies on in reaching its conclusion.  First, despite Plaintiff's claim that he never received copies of the materials after requesting them in June and October of 2004, when Plaintiff filed his Complaint on December 5, 2005, he failed to plead either that he had requested the materials from Defendants or that Defendants had failed to comply with his request.  Second, the deadline to file an Amended Complaint was July 1, 2007.  (Dkt. No. 25.)  However, Plaintiff failed to file an Amended Complaint.  Third, Plaintiff asserted his claim that he twice requested these materials, and that such request was ignored, for the first time on February 1, 2008, in his memorandum of law in support of his motion for summary judgment.

Under the circumstances, Plaintiff's has failed to comply with the pleading requirements of Rules 8, 10 and 12 of the Federal Rules of Civil Procedure.[1]  As a result, Plaintiff's claim that Defendants breached a fiduciary duty by failing to provide him with requested materials, raised for the first time in his memorandum of law in support of his motion for summary judgment, is dismissed.  *See Aretakis v. Durivage*, 07-CV-1273, 2009 WL 249781, at *26 (N.D.N.Y. Feb. 3, 2009) (collecting cases that stand for the proposition that a plaintiff's attempt to amend his complaint by instituting new causes of action at the summary judgment stage is in direct

---

[1]      *See Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted]; *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.) (explaining that a complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."), *aff'd*, 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion); *Beckman v. United States Postal Serv.*, 79 F. Supp.2d 394, 407-08 (S.D.N.Y. 2000) (noting that "[t]he pleading requirements of the Federal Rules of Civil Procedure are designed to provide defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests. Although a complaint need not correctly plead every legal theory supporting the claim, at the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense.") (internal quotation marks and citations omitted).

contravention of the Federal Rules of Civil Procedure); *see also Caribbean Wholesales & Serv. Corp. v. U.S. JVC Corp.*, 963 F. Supp. 1342, 1359 (S.D.N.Y. 1997) (Leisure, J.) ("[Plaintiff] in effect is apparently attempting to add a claim never addressed, or even hinted at, in the complaint.  Such a step is inappropriate at the summary judgment stage, after the close of discovery, without the Court's leave, and in a brief in opposition to a motion.").

### 2.    MetLife's Denial of Plaintiff's Request for STD Benefits

Plaintiff argues that Defendants' denial of Plaintiff's request for STD benefits was arbitrary and capricious because (1) MetLife did not properly employ the Plan's definition of disability,[2] and (2) the claim was processed in an arbitrary manner.[3]

In response, Defendants address both claims as follows.  First, with regard to Plaintiff's claim that MetLife did not properly employ the Plan's definition of disability, Defendants point out that MetLife, not Dr. Kessler, is responsible for making the final decision on whether or not Plaintiff's request for STD benefits is denied.  Defendants argue that Dr. Kessler's report only serves as a guide to help MetLife determine whether Plaintiff's medical records support a finding that Plaintiff had a significant psychiatric impairment.  In sum, Defendants argue that the medical records, as well as Dr. Kessler's interpretation of them, constitutes the "material medical evidence" relied on by MetLife to conclude that Plaintiff is still able to perform the Essential Functions of his job.

---

[2]       In seeking an independent review of Plaintiff's file, the MetLife case manager requested an opinion from Dr. Kessler on whether Plaintiff suffered a significant psychiatric impairment as of February 6, 2004.  Plaintiff argues that, because the Plan states that an employee is disabled "when . . . there is material medical evidence that the employee cannot perform the Essential Functions of his or her job . . .," MetLife should have instead requested an opinion from Dr. Kessler on whether Plaintiff was able to perform essential job functions.

[3]       Plaintiff argues that his claim was denied, at least in part, because both Plaintiff and Ms. Wickert failed to respond to Dr. Kessler's telephone calls.  According to Plaintiff, because less than one day was given for a response, it was arbitrary to deny the claim based at all on the fact that Ms. Wickert and Plaintiff failed to respond to the telephone calls.

Second, with regard to Plaintiff's argument that MetLife processed his claim in an arbitrary manner, Defendants argue that the claim was not processed in an arbitrary manner because (1) Dr. Kessler, as an independent physician reviewing Plaintiff's medical records, had no obligation to contact Plaintiff or Ms. Wickert in the first place, and (2) Plaintiff failed to explain why it should have taken Dr. Kessler more than a few minutes to review the three pages of medical records that he submitted in support of his claim.

In applying the arbitrary and capricious standard of review, the Court finds that MetLife did not abuse its discretion in denying Plaintiff's request for STD benefits.  As Defendant's correctly point out, Plaintiff has the burden of establishing entitlement to STD benefits under the terms of the Plan.  *See, e.g., MacMillan v. Provident Mut. Life Ins. Co. of Philadelphia*, 32 F. Supp.2d 600, 615 (W.D.N.Y. 1999) ("The burden of proving entitlement to coverage for an insurance benefit rests with the claimant.") (citations omitted); *Miller v. United Welfare Fund*, 72 F.3d 1066, 1074 (2d Cir. 1995) (citing *Fuja v. Benefit Trust Life Ins. Co.*, 18 F.3d 1405, 1408 [7th Cir. 1994] (holding that where the relevant provision is described in the benefits section of the insurance contract rather than the "exclusions" section, the plaintiff bears "the burden of establishing her entitlement to the insurance benefits").  Plaintiff may satisfy this burden by introducing sufficient medical evidence for MetLife to conclude that he is disabled.  However, the Supreme Court has made clear that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (2003).

In reviewing Plaintiff's claim of entitlement to STD benefits, MetLife had only two pieces of medical evidence that it could consider because Plaintiff submitted only two documents

in support of his request.  Specifically, Plaintiff submitted (1) an "Acute Care/Follow Up" form prepared by Ms. Wickert, and (2) a letter prepared by Ms. Wickert.

The "Acute Care/Follow Up" form stated that Plaintiff presented "for follow-up on stressful situation," a rash on his side, and blood in his stool.  The form also stated that Plaintiff has "very low self esteem, feelings of failure, feeling overwhelmed, can't concentrate, [and] insomnia."  The form concluded that Plaintiff would be out of work until March 8 and would continue some type of counseling.

Because this was the only document originally submitted by Plaintiff in support of his request for STD benefits, after receiving his claim and this "Acute Care/Follow Up" form, MetLife made efforts to contact Plaintiff to obtain additional information.  However, Plaintiff did not respond to MetLife's requests or return MetLife's telephone calls.  As a result, and without more, MetLife moved forward with considering Plaintiff's claim, ultimately denying it based upon an absence of material medical evidence that would support Plaintiff's claim.

After Plaintiff was denied his request for STD benefits, he was advised that, in the event that he chose to appeal the decision, he should submit information "from his therapist and/or any treating provider for his current condition indicating how he is unable to work."  Nonetheless, when Plaintiff appealed the denial, the only document he submitted in support of his appeal was Ms. Wickert's letter, which stated that Plaintiff was being treated for "generalized anxiety disorder and post traumatic stress disorder," and that "[t]hese conditions currently make him unable to work because his job is very stressful and he has interpersonal conflict at work."

Despite this minimal evidence offered in support of Plaintiff's request for STD benefits, in an effort to consider Plaintiff's appeal, MetLife requested that an independent physician provide it with an opinion as to whether or not these general letter assertions from Ms. Wickert sufficiently demonstrated that Plaintiff suffers a significant psychiatric impairment.  This

physician, Dr. Kessler, opined, among other things, that "[t]here is insufficient information to support a psychiatric diagnosis, as consistent with DSM IV criteria."  Dr. Kessler based this conclusion on his opinion that "[t]here is inadequate information to assess the presence of any significant functional limitations from 2/6/04.  Lacking is a comprehensive psychiatric history, objective mental status examination, sustained DSM IV diagnosis, treatment plan, and evidence of functional limitations."

Based on MetLife's interpretation of the materials submitted, the opinion that it obtained from an independent physician, and Plaintiff's failure to submit specific materials that would support his claim, MetLife denied Plaintiff's appeal.  Plaintiff's argument that MetLife improperly employed the Plan's definition of disability is without merit for the reasons articulated above.  In addition, Plaintiff's argument that Defendants' denial was arbitrary given that sufficient time was not allowed for Plaintiff and Ms. Wickert to respond to Dr. Kessler's telephone calls is also without merit for the reasons articulated above.  In sum, the Court finds that Defendants did not abuse their discretion in denying Plaintiff's request for STD benefits. This is because, it cannot be said, based on the limited and conclusory nature of the documents that Plaintiff submitted, Plaintiff's failure to respond to requests for additional materials, and Dr. Kessler's independent observations and opinions, that MetLife's decision to deny Plaintiff's request due to a lack of material medical evidence supporting his  claim was unsupported by substantial evidence.

### C.    Plaintiff's Claim of Entitlement to LTD Benefits

In his February 23, 2007, Decision and Order denying Defendants' motion to dismiss, Judge Mordue indicated that, "[i]f plaintiff can demonstrate that he applied for LTD benefits and that defendants failed to take action on the application, he may be entitled to de novo review of his request for LTD benefits."  (Dkt. No. 21.)  Plaintiff does not mention LTD benefits anywhere

16

in his memorandum of law in support of his motion for summary judgment or in his statement of material facts.  Thus, Plaintiff has failed to even make an effort to demonstrate that he applied for LTD benefits and that Defendants failed to take action on the application.  In addition, as Defendants point out, the relevant period for Plaintiff to apply for LTD has lapsed.

The Managed Disability Plan indicates that LTD benefits, which may be payable if a claimant is not eligible for STD, but is receiving worker's compensation benefits, may only be sought during a certain window.  Specifically, a claimant must be absent from work for a minimum of 26-weeks (the "qualifying period"), and the claimant must give notice of his claim to MetLife within 30 days after the date that he becomes disabled.  The Managed Disability Plan also requires the claimant to send his application for LTD benefits with accompanying medical data to MetLife no later than 30 days prior to the expiration of the 26-week qualifying period.

Here, Plaintiff's 26-week qualifying period began to run on February 9, 2004, when he claims he became disabled and left his position at Verizon Wireless.  Plaintiff did not submit, and has never submitted, any written claim for LTD benefits under the Plan.  Given that more than 26 weeks have passed since the qualifying period began to run, Plaintiff's claim for LTD benefits must be dismissed.

### D.    Plaintiff's Claims of Breach of Contract and Negligence

As noted by Judge Mordue in his Decision and Order of February 23, 2007, "Plaintiff does not dispute that ERISA governs his claims; rather, he argues that the terms 'breach of contract' and 'negligence' are intended to describe defendants' misconduct under ERISA, not to set forth claims under the common law."  *Magin v. Cellco Partnership*, 05-CV-1573, 2007 WL 625979, at \*2 (N.D.N.Y. Feb. 23, 2007).  Accordingly, the Court need not, and does not, separately address Plaintiff's state common law claims for breach of contract and negligence because such claims have already been "recharacterize[d] . . . as ERISA causes of action."

17

*Magin,* 2007 WL 625979, at *2.  The Court would only add that, for the reasons articulated in its

decision in *White v. Verizon Communications*, *Inc*., 06-CV-1536, 2008 WL 5382329, at *6

(N.D.N.Y. Dec. 17, 2008), Plaintiff's state common law claims must be dismissed.

       **ACCORDINGLY**, it is

       **ORDERED** that Defendants' motion for summary judgment (Dkt. No. 29) be

**GRANTED**; and it is further

       **ORDERED** that Plaintiff's  motion for summary judgment (Dkt. No. 30) be **DENIED**;

and it is further

       **ORDERED** that the Complaint (Dkt. No. 1) be **DISMISSED** in its entirety.

Dated: September 29, 2009
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

18